1

2

3

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7  VALERIE STEPHENSON,

8                              Plaintiff,

9          v.

10  CAROLYN W. COLVIN,
    Commissioner of the Social Security

11  Administration,

12                              Defendant.

13

NO:  14-CV-3003-TOR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

14          BEFORE THE COURT are the parties' cross-motions for summary

15  judgment (ECF Nos. 14; 15).  Cory Brandt represents Plaintiff.  Leisa A. Wolf

16  represents Defendant.  The Court has reviewed the administrative record and the

17  parties' completed briefing and is fully informed.  For the reasons discussed below,

18  the Court denies Plaintiff's motion and grants Defendant's motion.

19  //

20  //

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."

*Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's]

ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted).

The party appealing the ALJ's decision generally bears the burden of establishing

that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C.

§ 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R.

§ 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activities, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

from "any impairment or combination of impairments which significantly limits

[his or her] physical or mental ability to do basic work activities," the analysis

proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

does not satisfy this severity threshold, however, the Commissioner must find that

the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

several impairments recognized by the Commissioner to be so severe as to

preclude a person from engaging in substantial gainful activity.  20 C.F.R.

§ 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity

of the enumerated impairments, the Commissioner must pause to assess the

claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations (20 C.F.R.
§ 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's
RFC, the claimant is capable of performing work that he or she has performed in
the past ("past relevant work").  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is
capable of performing past relevant work, the Commissioner must find that the
claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of
performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's
RFC, the claimant is capable of performing other work in the national economy.
20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner
must also consider vocational factors such as the claimant's age, education and
work experience.  *Id.*  If the claimant is capable of adjusting to other work, the
Commissioner must find that the claimant is not disabled.  20 C.F.R.
§ 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, the
analysis concludes with a finding that the claimant is disabled and is therefore
entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.
*Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If
the analysis proceeds to step five, the burden shifts to the Commissioner to

establish that (1) the claimant is capable of performing other work; and (2) such

work "exists in significant numbers in the national economy."  20 C.F.R.

§ 404.1560(c); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for disability insurance benefits on March 18, 2011.  Tr.

140-41.  Her application was denied initially and upon reconsideration, *id.* at 91-

97, 99-103, and Plaintiff requested a hearing, *id.* at 104-05.  Plaintiff appeared

before an administrative law judge ("ALJ") on October 5, 2012.  *Id.* at 42-58.  The

ALJ issued a decision denying Plaintiff benefits on November 14, 2012.  *Id.* at 16-

41.

The ALJ found that Plaintiff met the insured status requirements of Title II

of the Social Security Act through September 30, 2013.  *Id.* at 21.  At step one, the

ALJ found that Plaintiff had not engaged in substantial gainful activity since April

1, 2010, the alleged onset date.  *Id.*  At step two, the ALJ found that Plaintiff had

the following severe impairments: fibromyalgia, migraine headaches, sleep apnea,

osteoporosis, hypothyroidism, adrenal insufficiency, and adjustment disorder.  *Id.*

at 21-22.  At step three, the ALJ found that Plaintiff's severe impairments did not

meet or medically equal a listed impairment through the date last insured.  *Id.* at

22-24.  The ALJ then determined that Plaintiff had the RFC to

> perform essentially a full range of light *unskilled* work as defined in
> 20 CFR 404.1567(b); she is able to climb ladders, ropes, and

scaffolds, *frequently*; she is able to stoop, kneel, crouch, and crawl *frequently*; she must avoid *concentrated* exposure to hazards (e.g.[,] machinery and heights); she is able to understand, remember, attend to, and persist on simple tasks; she is able [to] handle simple work changes; and she is able to have superficial and occasional interaction with the general public and coworkers.

*Id.* at 24 (emphasis in original). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. *Id.* at 31. At step five, based on Plaintiff's residual functional capacity for the full range of unskilled light work, the ALJ found Plaintiff "not disabled" under the Medical-Vocational Guidelines. *Id.* at 34-35. Thus, the ALJ concluded that Plaintiff was not disabled and denied her claims on that basis. *Id.* at 35.

The Appeals Council denied Plaintiff's request for review on December 9, 2013, *id.* at 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

//

//

//

//

//

//

//

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

1

**ISSUES**

2        Plaintiff seeks judicial review of the Commissioner's final decision denying

3    her disability insurance benefits under Title II of the Social Security Act.  ECF No.

4    14.  Plaintiff has presented the following three issues for this Court's review:

5        1.  Whether the ALJ erred in assessing Plaintiff's credibility;

6        2.  Whether the ALJ properly weighed the opinion of Dr. Jackson; and

7        3.  Whether the ALJ failed to meet his step five burden to identify
            specific jobs, available in significant numbers, consistent with the
8            claimant's specific functional limitations.

9    *Id.* 7.

10                                    **DISCUSSION**

11   **A. Adverse Credibility Finding**

12        In social security proceedings, a claimant must prove the existence of

13   physical or mental impairment with "medical evidence consisting of signs,

14   symptoms, and laboratory findings."  20 C.F.R. §§ 416.908, 416.927.  A claimant's

15   statements about his or her symptoms alone will not suffice.  20 C.F.R. §§

16   416.908, 416.927.  Once an impairment has been proven to exist, an ALJ "may not

17   reject a claimant's subjective complaints based solely on a lack of objective

18   medical evidence to fully corroborate the alleged severity of pain."  *Bunnell v.*

19   *Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).  As long as the impairment

20   "could reasonably be expected to produce [the] symptoms," the claimant may offer

1    a subjective evaluation as to the severity of the impairment.  *Id.*  This rule

2    recognizes that the severity of a claimant's symptoms "cannot be objectively

3    verified or measured."  *Id.* at 347 (quotation and citation omitted).

4         In order to find Plaintiff's testimony unreliable, the ALJ is required to make

5    "a credibility determination with findings sufficiently specific to permit the court

6    to conclude that the ALJ did not arbitrarily discredit claimant's testimony."

7    *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  An ALJ must perform a

8    two-step analysis when deciding whether to accept a claimant's subjective

9    symptom testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  The

10   first step is a threshold test from *Cotton v. Bowen* requiring the claimant to

11   "produce medical evidence of an underlying impairment which is reasonably likely

12   to be the cause of the alleged pain."  799 F.2d 1403, 1407 (9th Cir. 1986); *see also*

13   *Bunnell*, 947 F.2d at 343.  "Once a claimant meets the *Cotton* test and there is no

14   affirmative evidence suggesting she is malingering, the ALJ may reject the

15   claimant's testimony regarding the severity of her symptoms only if [the ALJ]

16   makes specific findings stating clear and convincing reasons for doing so."

17   *Smolen*, 80 F.3d at 1283-84 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.

18   1993)).  In weighing the claimant's credibility, the ALJ may consider many

19   factors, including "'(1) ordinary techniques of credibility evaluation, such as the

20   claimant's reputation for lying, prior inconsistent statements concerning the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

1   symptoms, and other testimony by the claimant that appears less than candid; (2)

2   unexplained or inadequately explained failure to seek treatment or to follow a

3   prescribed course of treatment; and (3) the claimant's daily activities.'"

4   *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80

5   F.3d at 1284). If the ALJ's finding is supported by substantial evidence, the court

6   may not engage in second-guessing. *Id*.

7        Here, Plaintiff contends the ALJ improperly rejected her subjective

8   complaints. ECF No. 14 at 14-15. Specifically, Plaintiff contends the ALJ

9   committed error when using Plaintiff's activities as a basis to discredit her

10  testimony. *Id.* at 15.

11       This Court disagrees. The ALJ provided the following specific, clear, and

12  convincing reasons supported by substantial evidence for finding Plaintiff's

13  subjective statements "not credible to the extent they are inconsistent with" the

14  ALJ's RFC assessment: (1) Plaintiff's statements of disability were inconsistent

15  with her reported daily activities; and (2) Plaintiff's statements concerning the

16  severity of her limitations were inconsistent with her failure to seek treatment.

17  Tr. 26-29.

18       First, the ALJ found that Plaintiff's "reported activities belie[d] her

19  allegations that she is disabled." *Id.* at 27. For instance, although Plaintiff

20  maintained that she was only capable of sedentary level tasks, her daily activities—

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

1  such as childcare, laundry and other household work, and shopping—indicated that

2  she was actually capable of at least light work.  *Id.* at 28.  These inconsistencies

3  between Plaintiff's alleged limitations and her reported daily activities provided a

4  permissible and legitimate reason for discounting Plaintiff's credibility.  *Thomas*,

5  278 F.3d at 958-59; *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)

6  (finding that daily activities may be relevant to an adverse credibility finding either

7  because they contradict a claimant's testimony or demonstrate abilities and skills

8  that can easily transfer to a workplace setting).

9       Second, the ALJ found Plaintiff's statements concerning the severity of her

10  limitations were inconsistent with her failure to seek treatment.  Tr. 28.  For

11  instance, the ALJ noted that despite Plaintiff's allegations of dramatic worsening

12  condition, she did not tell her treatment provider or otherwise seek medical

13  treatment:

14       She alleged that she had greater pain in August 2011, doing nothing
        other than going to the bathroom for 2-3 days per week.  By October
15       2011, her pain and fatigue were so severe that she could not cook or
        bathe.  Yet, in a treatment note date[d] just 3 days later, she sought
16       treatment for dizziness and sleep apnea. She did not complain about
        any dramatic increase in pain or the inability to function 2-3 days per
17       week.  After this treatment visit, she apparently did not see another
        provider until June 2012, at which point she developed new problems
18       (pulmonary embolism and edema).  The lack of treatment during a
        period of such dramatic worsening of her then-existing conditions
19       (e.g.[,] fibromyalgia) undermines her allegation of worsening.

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

1    *Id.* (internal citations omitted).  These inconsistencies between Plaintiff's alleged

2    limitations and her failure to seek treatment provided a permissible and legitimate

3    reason for discounting Plaintiff's credibility.  *Tommasetti v. Astrue*, 533 F.3d 1035,

4    1039 (9th Cir. 2008) (finding that a plaintiff's "unexplained or inadequately

5    explained failure to seek treatment" provided legitimate reason for rejecting

6    claimant's credibility).

7         Accordingly, because the ALJ provided specific, clear, and convincing

8    reasons based on substantial evidence for discounting Plaintiff's credibility, this

9    Court does not find error.

10   **B. Opinion Evidence**

11        There are three types of physicians: "(1) those who treat the claimant

12   (treating physicians); (2) those who examine but do not treat the claimant

13   (examining physicians); and (3) those who neither examine nor treat the claimant

14   [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

15   *Holohan*, 246 F.3d at 1201-02 (citations omitted).  "Generally, a treating

16   physician's opinion carries more weight than an examining physician's, and an

17   examining physician's opinion carries more weight than a reviewing physician's."

18   *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are

19   explained than to those that are not . . . and to the opinions of specialists

20

concerning matters relating to their specialty over that of nonspecialists." *Id.*
(citations omitted).

A treating physician's opinions are generally entitled to substantial weight in
social security proceedings. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219,
1228 (9th Cir. 2009). If a treating or examining physician's opinion is
uncontradicted, an ALJ may reject it only by offering "clear and convincing
reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d
1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any
physician, including a treating physician, if that opinion is brief, conclusory and
inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (quotation
and citation omitted). "If a treating or examining doctor's opinion is contradicted
by another doctor's opinion, an ALJ may only reject it by providing specific and
legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at
1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

Here, Plaintiff contends the ALJ erred by improperly rejecting the opinion of
her treating physician, Dr. David Jackson. ECF No. 14 at 7. Specifically, Plaintiff
points to Dr. Jackson's May 2012 assessment in which he opined Plaintiff was
capable of "[l]ess than sedentary work." *Id.* at 10; Tr. 460.

This Court finds the ALJ properly assigned the May 2012 opinion of Dr.
Jackson "no weight." Because Dr. Smith's opinion was contradicted, *see* Tr. 30-31

1    (noting that the opinions of Dr. Brown and Dr. Ignacio demonstrated Plaintiff's

2    ability to perform "slightly reduced light work"), the ALJ need only have given

3    specific and legitimate reasoning supported by substantial evidence to reject it.

4    *Bayliss*, 427 F.3d at 1216.

5         First, the ALJ found Dr. Jackson's opinion was influenced by Plaintiff's

6    subjective complaints.  Tr. 30-31.  As explained above, the ALJ determined

7    Plaintiff's self-reporting was not credible.  The ALJ considered Dr. Jackson's

8    report in relation to all the other evidence in the record and concluded that it was

9    influenced by Plaintiff's subjective reporting.  *Id.* at 30-31. For instance, although

10   Dr. Jackson opined that Plaintiff had suffered severe limitations since 2008,

11   limitations that limited her to either light activity or "[l]ess than sedentary work,"

12   the ALJ noted Plaintiff "was working 55-65 hours in a light level position until

13   May 2010" and her "normal activities, as reported in June 2011, were greater than

14   the limitations in his assessment."  *Id.* at 31.  Because the ALJ need not accept a

15   medical opinion based on a claimant's non-credible self-reporting, *Tomasetti,* 533

16   F.3d at 1041, this provided a specific and legitimate reason for rejecting Dr.

17   Jackson's opinion.

18        Second, the ALJ found Dr. Jackson's opinion was not supported by the

19   evidence in the record.  The ALJ found the great weight of evidence in the

20   record—including the opinions of Dr. Brown and Dr. Ignacio—demonstrated

Plaintiff was capable of light exertional work.  Tr. 30-31.  Because contrary

opinions provide a specific and legitimate reason for rejecting a medical opinion,

*see Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), the ALJ provided

another specific and legitimate reason for rejecting Dr. Jackson's opinion.

Finally, the ALJ noted inconsistencies in Dr. Jackson's own assessment.

Although Dr. Jackson opined Plaintiff was capable of "[l]ess than sedentary work,"

the ALJ comments that Dr. Jackson's notes also "[c]onfusingly" indicated that

Plaintiff's condition mandated no work "beyond a light activity." Tr. 30-31, 460.

Because inconsistencies between a doctor's opinion and his own reports, as well as

other objective evidence, provide specific and legitimate reasoning for rejecting

even a treating doctor's opinion, *see Bayliss*, 427 F.3d at 1216 (finding a

discrepancy between a doctor's opinion and his other recorded observations and

opinions provided a clear and convincing reason for not relying on that doctor's

opinion), the ALJ provided a third specific and legitimate reason for rejecting Dr.

Jackson's opinion.

Accordingly, the ALJ did not err in affording "no weight" to Dr. Jackson's

May 2012 assessment.

## C. Step Five Analysis

Once a claimant has demonstrated a severe impairment that prevents her

from engaging in any previous work, the burden then shifts to the Commissioner to

demonstrate that the claimant can perform some other work—considering the

claimant's RFC, age, education, and work experience—that exists in "significant

numbers" in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir.

1999). The Commissioner can satisfy this burden in one of two ways: (1) by the

testimony of a vocational expert, or (2) by reference to the Medical-Vocational

Guidelines. *Id.* at 1101.

In some cases, it is appropriate for the Commissioner to rely on the Medical-

Vocational Guidelines, which provide a matrix system for handling claims that

involve substantially uniform levels of impairment, to determine whether a

claimant can perform some work that exists in "significant numbers" in the

national economy. *Id.* at 1101. The grids present a "short-hand method for

determining the availability and number of suitable jobs for a claimant," which

approach "allows the Commissioner to streamline the administrative process and

encourages uniform treatment of claims." *Id.* To determine where a claimant fits

within the grids, the ALJ applies a matrix of four factors: age, education, previous

work experience, and physical ability. *Lounsburry v. Barnhart*, 468 F.3d 1111,

1114-15 (9th Cir. 2006). Each combination of factors directs a finding of

"disabled" or "not disabled": "If a claimant is found able to work jobs that exist in

significant numbers, the claimant is generally considered not disabled." *Id.* at

1115.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

1    The nature of a claimant's limitations determines whether use of the grids is

2    appropriate.  "Where a claimant suffers only exertional limitations, the ALJ must

3    consult the grids."  *Id*.  On the other hand, where a claimant suffers only non-

4    exertional limitations, use of the grids is inappropriate.  *Id.*  If the claimant's

5    limitations are mixed, an ALJ may use the grids, which provide for an assessment

6    of both exertional and non-exertional limitations, unless "a claimant's non-

7    exertional limitations are 'sufficiently severe' so as to significantly limit the range

8    of work permitted by the claimant's exertional limitations."  *Hoopai v. Astrue*, 499

9    F.3d 1071, 1075 (9th Cir. 2007) (quoting *Burkhart v. Bowen*, 856 F.3d 1335, 1340

10   (9th Cir. 1988)).  That is, "a vocational expert is required only when there are

11   significant and 'sufficiently severe' non-exertional limitations not accounted for in

12   the grid."  *Id.* at 1076.

13       Plaintiff contends that the "significant impairments" in her ability to interact

14   with co-workers and the general public, as indicated by Dr. Toews, took her case

15   out of the Medical-Vocational Guideline grids and thus the ALJ was required to

16   solicit vocational expert testimony.  ECF No. 14 at 19.

17       Here, the ALJ's RFC finding limited Plaintiff to "superficial and occasional

18   interaction with the general public and coworkers."  Tr. 24.  At step five, the ALJ

19   concluded that Plaintiff had the capacity to perform the full range of light work and

20   her additional non-exertional limitations had little or no effect on the occupational

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

base of unskilled light work.  *Id.* at 32.  As indicated by the regulations, light work represents "substantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs and, thus, generally provides sufficient occupational mobility even for severely impaired individuals who are not of advanced age and have sufficient educational competencies for unskilled work.  20 C.F.R. pt. 404, Subpt.P, App. 2, Rule 202.00(b).  In turn, "[t]he primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people)."  *Id.* at Rule 202.00(g); *see also* 20 C.F.R. § 404.1568(a) (defining "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time," placing no emphasis on ability to interact with people).  The Medical-Vocational guidelines take "administrative notice" of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels, including light activity.  *Id.* at Rule 200.00(b).

This Court affirms the ALJ's finding that Plaintiff's non-exertional limitations—namely, her limited ability to interact with coworkers and the general public—were not sufficiently severe so as to require assistance of a vocational expert.  The ALJ's finding that Plaintiff's mental impairments were not sufficiently severe so as to affect her ability to work beyond her exertional limitations, Tr. 34, is supported by substantial evidence.  Dr. Toews opined that Plaintiff was

cognitively intact and of average intelligence; that her attention, concentration, memory, and learning were normal; that she could follow detailed instructions; and that she would have difficulty interacting with coworkers and the public. Tr. 29, 338. Dr. Howard and Dr. Beaty, state agency mental consultants, opined that Plaintiff could understand and remember simple instructions, attend to and persist on simple work tasks, and engage in superficial conservations with the public and coworkers on a limited basis. *Id.* at 29, 61-72. The ALJ afforded these opinions "significant weight" in determining Plaintiff's non-exertional limitations. *Id.* at 29. In addition, based on Plaintiff's reported daily activities, the ALJ acknowledged that although Plaintiff may have "some difficulty with concentration and social interactions," she had the ability to perform at least simple tasks and have limited interaction with others. *Id.* at 30. Accordingly, the ALJ's findings, based on substantial evidence, concluded that Plaintiff's non-exertional limitations would not affect her ability to perform unskilled, light work, as defined in the regulations, and thus the ALJ's disability assessment based on the Medical-Vocational Guideline grids did not need further assistance from a vocational expert. *See Hoopai*, 499 F.3d 1071, 1076-77 (affirming the ALJ's exclusive use of the grids for a claimant whose only non-exertional limitations were mild to moderate depression and social functioning).

//

1    **ACCORDINGLY, IT IS HEREBY ORDERED:**

2        1.  Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

3        2.  Defendant's Motion for Summary Judgment (ECF No. 15) is

4            **GRANTED**.

5    The District Court Executive is hereby directed to file this Order, enter

6    **JUDGMENT** for **DEFENDANT**, provide copies to counsel, and **CLOSE** the file.

7        **DATED** February 17, 2015.

8    

9                        THOMAS O. RICE
                      United States District Judge

10

11

12

13

14

15

16

17

18

19

20